IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAVIER SARDINA-GARCIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 19-1528 |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

O R D E R

AND NOW, this 28th day of September, 2020, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision denying Plaintiff's claim for Disability Insurance Benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401, et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Secretary of U.S. Department of Health & Human Services, 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). See also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris,

642 F.2d 700, 705 (3d Cir. 1981)).  See also Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986).[1]

---

[1]     Plaintiff raises several ways in which he believes that the Administrative Law Judge ("ALJ") erred in finding him to be not disabled under the Social Security Act.  The Court disagrees and instead finds that substantial evidence supports the ALJ's decision.

A good deal of the disagreement in this case revolves around a report prepared by Matthew Burkett, CRNP, DNP.  After some initial confusion, all parties agreed that Mr. Burkett is a nurse practitioner and not a medical doctor.  This seems to have led to a few issues.  First, Plaintiff argues that the ALJ erred in finding that his diabetes mellitus and lumbar radiculopathy were not severe impairments at Step Two of the sequential process merely because they were diagnosed by Mr. Burkett, who is not a medically acceptable source.  Plaintiff further argues that the ALJ failed to give sufficient weight to Mr. Burkett's opinion that he was totally and permanently disabled even in light of the fact that Mr. Burkett is not an acceptable medical source.  The Court finds, however, that the ALJ's consideration of Mr. Burkett's report, and the other opinion evidence, was reasonable and supported by substantial evidence.

The Court first notes that, while the ALJ did decline to find Plaintiff's lumbar radiculopathy to be a severe impairment because it had not been diagnosed by a medically acceptable source, Defendant is correct that the ALJ did not do so in regard to Plaintiff's diabetes mellitus.  Instead, she simply found that it did not constitute a severe impairment, *i.e.*, it caused no more than minimally vocationally relevant limitations.  (R. 18-19).  However, it ultimately does not matter because the Step Two determination as to whether a claimant is suffering from a severe impairment is a threshold analysis requiring the showing of only one severe impairment.  See Bradley v. Barnhart, 175 Fed. Appx. 87, 90 (7th Cir. 2006).  In other words, as long as a claim is not denied at Step Two, it is not generally necessary for the ALJ specifically to have found any additional alleged impairment to be severe.  See Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007); Lee v. Astrue, Civ. No. 06-5167, 2007 WL 1101281, at *3 n.5 (E.D. Pa. Apr. 12, 2007); Lyons v. Barnhart, Civ. No. 05-104, 2006 WL 1073076, at *3 (W.D. Pa. March 27, 2006).  Since Plaintiff's claim was not denied at Step Two, it does not matter whether the ALJ correctly or incorrectly found that Plaintiff's alleged diabetes mellitus and lumbar radiculopathy were not severe impairments.

Of course, even if an impairment is non-severe, it may still affect a claimant's RFC.  In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184 (S.S.A.), at *5 (July 2, 1996).  See also 20 C.F.R. § 404.1545(a)(2).  "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim."  SSR 96-8p at *5.  Accordingly, merely because the ALJ did not find Plaintiff's diabetes mellitus and lumbar radiculopathy to be severe impairments does not mean that these conditions could not still have affected Plaintiff's RFC.

Here, however, the ALJ expressly stated that the RFC, as formulated, accommodated any residual effects from Plaintiff's non-severe impairments. (R. 19). Indeed, as Defendant notes, the ALJ found Plaintiff's "disc bulge and herniation with impingement on the thecal sac and the nerve roots with marked right-sided foraminal stenosis L5-S1 with impingement of the L5 nerve root" to be a severe impairment (R. 18) and clearly accounted for Plaintiff's lower back issues in determining the appropriate RFC. It is important to remember that the issue is not the precise nature of Plaintiff's lower back diagnosis, but whether this condition "caused functional limitations that precluded [him] from engaging in any substantial gainful activity." Walker v. Barnhart, 172 Fed. Appx. 423, 426 (3d Cir. 2006). Although Plaintiff argues generally that he can perform no more than sedentary work, he does not identify any particular functional limitations that his lumbar radiculopathy would cause independent of his other back issues. Likewise, it is not clear what additional restrictions needed to be included in the RFC to account of Plaintiff's diabetes mellitus.

Plaintiff does, of course, argue that the RFC is inaccurate in general, in large part because the ALJ failed to properly weigh the medical opinion evidence, including Mr. Burkett's report (R. 648-50, 658). He argues that the ALJ improperly gave more weight to the less recent opinion of the consultative examiner than to those of his treating health care providers, including Mr. Burkett, but also including Jayesh Gosai, M.D. (R. 648-50, 658), who co-signed Mr. Burkett's report; Milton Klein, D.O. (R. 550-52); and Stephen Conti, M.D. (R. 653-55). As Plaintiff points out, when assessing a claimant's application for benefits, the opinion of the claimant's treating physician generally is to be afforded significant weight. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). In fact, the regulations provide that for claims, such as this one, filed before March 27, 2017, a treating physician's opinion is to be given "controlling weight" so long as the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); Fargnoli, 247 F.3d at 43; Plummer, 186 F.3d at 429. As a result, the ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, and not on the basis of the ALJ's own judgment or speculation, although he or she may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. See Plummer, 186 F.3d at 429. However, it is also important to remember that:

> The ALJ -- not treating or examining physicians or State agency consultants -- must make the ultimate disability and RFC determinations. Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity[.]" Brown v. Astrue, 649 F.3d 193, 197 n. 2 (3d Cir.2011).

Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (internal citations omitted in part).

Moreover, while an ALJ must consider the treating relationship between a claimant and an opining doctor, when the medical opinion of a treating source conflicts with that of a non-treating, or even a non-examining physician, "the ALJ may choose whom to credit." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). See also Dula v. Barnhart, 129 Fed. Appx. 715, 718-19 (3d Cir. 2005). The ALJ, of course, "'cannot reject evidence for no reason or for the wrong reason,'" Morales, 225 F.3d at 317 (quoting Plummer, 186 F.3d at 429), and can only give the opinion of a non-treating, non-examining physician weight insofar as it is supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation provided for the opinion. See SSR 96-6p, 1996 WL 374180 (S.S.A.), at *2 (1996). The ALJ did so here, and her findings are supported by substantial evidence.

Contrary to Plaintiff's contentions to the contrary (Doc. No. 14 at p. 18), the ALJ did not refuse to consider the opinions drafted by Mr. Burkett and co-signed by Dr. Gosai. Rather, she expressly considered them but afforded them little weight, providing reasons for her findings. As to Mr. Burkett's first report, the ALJ did not dismiss his opinion that Plaintiff had a permanent total disability because he was nurse practitioner, but rather because the ALJ found the opinion to provide diagnoses not reflected in Mr. Burkett's own treatment notes or the medical records in general. She also noted that, based on the nature of the report, it seemed calculated to support a claim for benefits rather than to assess Plaintiff's medical conditions and functional capacity. (R. 26). The ALJ acknowledged that Dr. Gosai co-signed the second report from Mr. Burkett, but also noted that he did nothing more than state that he agreed with Mr. Burkett. Therefore, for the same reasons she gave little weight to Mr. Burkett's opinion, as well as the fact that the record failed to establish that Dr. Gosai had a treating relationship with Plaintiff, she also reasonably assigned little weight to Dr. Gosai's statement. Similarly, the ALJ gave Dr. Klein's opinion that Plaintiff was limited to sedentary work little weight because he did not explain the basis for his findings and because they were inconsistent with the medical evidence. She properly declined to give weight to Dr. Klein's opinion that Plaintiff was "work-disabled" (R. 25-26), because a physician's statement that a claimant is "disabled" or "unable to work" is not binding on the ALJ, as opinions as to whether a claimant is disabled is reserved to the Commissioner of Social Security. See 20 C.F.R. § 404.1527(d)(1); Griffin v. Comm'r of Soc. Sec., 305 Fed. Appx. 886, 891 (3d Cir. 2009); Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000). In regard to Dr. Conti, the ALJ properly noted that his opinion was not a function-by-function analysis but rather just a statement that Plaintiff could not perform his past work as a ship fitter. (R. 26). In light of the fact that the ALJ found that Plaintiff was unable to perform his past work, it is not clear that Dr. Conti's opinion is even inconsistent with the ALJ's decision.

On the other hand, the ALJ gave great weight to the opinion of the state agency physical consultant, Margel Guie, D.O. (R. 73-83), that Plaintiff could perform a range of medium work, explaining at length why the opinion was supported by the record, including the medical records as well as Plaintiff's activities of daily living. (R. 24). While Plaintiff mistakenly alleges that the ALJ also gave great weight to the opinion of consultative examiner Christina Sabeh, M.D. (R. 536-48), the ALJ actually gave it little weight. (R. 25). However, she did note that portions of Dr. Sabeh's report overestimated the severity of Plaintiff's restrictions while other portions underestimated these limitations. As such, while Dr. Sabeh's report was in some ways

supportive of the RFC finding, the ALJ did not over-rely on this opinion.  Plaintiff also asserts that the ALJ should not have relied upon these opinions because they were rendered approximately eight months before his amended onset date.  However, the Court notes that it is not unexpected for the record to contain evidence post-dating the state reviewing agent's opinion.  Generally speaking, "there is always a time lapse between the consultant's report and the ALJ hearing and decision."  Chandler, 667 F.3d at 361.  Here, the record does not demonstrate any significantly changed conditions from the dates on which the reviewing agents' opinions were rendered.  Moreover, while there is in fact evidence to which state reviewing agents had no access, the ALJ was aware of and considered and discussed said evidence in weighing the opinions.

In other words, the ALJ considered all of the opinions in crafting the RFC, just as she was supposed to do.  This is particularly necessary in a case like this one where there is a good deal of objective medical evidence and several opinions regarding Plaintiff's functional capacity.  An important part of the ALJ's job in a case like this is to consider the consistency of each medical opinion with the other evidence, including the other medical opinions of record.  See 20 C.F.R. § 404.1527(c)(4).  Here, the ALJ did just that.

Plaintiff also contends that the ALJ erred in finding that Plaintiff could perform the jobs identified by the vocational expert ("VE") – laundry worker, cleaner II, garment sorter, laundry sorter, and solderer – at the hearing.  Plaintiff claims that the ALJ was required to resolve the conflict between the VE's testimony that he could perform these jobs and the requirements of these positions pursuant to the Dictionary of Occupational Titles ("DOT"), which he alleges were incompatible with his inability to communicate in English.  The Court disagrees for various reasons and finds that the ALJ properly relied on the testimony of the VE in finding that Plaintiff could perform jobs that exist in significant numbers in the national economy.

"The DOT is a vocational dictionary that lists and defines all jobs available in the national economy and specifies what qualifications are needed to perform each job."  McHerrin v. Astrue, Civ. No. 09-2035, 2010 WL 3516433, at *3 (E.D. Pa. Aug. 31, 2010) (citing SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000)).  Among other qualifications, jobs in the DOT are assigned a General Educational Development ("GED") level, which includes a reasoning, mathematical, and language development level.  See DOT, App. C, § III.  The GED generally "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance."  Id.  The three component parts of the GED – reasoning development ("RD"), mathematical development ("MD"), and language development ("LD") – are each rated on a scale from 1 to 6, with 1 representing the lowest degree of required development. Three of the positions which the VE testified, and the ALJ found, Plaintiff could perform – laundry worker, cleaner II, and garment sorter – have an LD level of 1, while the positions of laundry sorter and solderer have an LD level of 2.  See DOT §§ 361.684-014, 919.687-014, 222.687-014, 361.687-014 and 813.684-026.  The Components of the Definition Trailer contained in Appendix C of the DOT provides that an LD level of 1 includes the ability to "[r]ecognize meaning of 2,500 (two- or three-syllable) words, [r]ead at [the] rate of 95-120 words per minute, and [c]ompare similarities and differences between words and between series of numbers; [p]rint simple sentences containing subject, verb, and object, and series of numbers,

5

names, and addresses; and [s]peak simple sentences, using normal word order, and present and past tenses." DOT, App. C, § III. As noted, this represents the lowest level of language development for any job included in the DOT.

The ALJ found that Plaintiff was not able to communicate in English, therefore rendering him essentially illiterate in English. (R. 28-29). The issue, then, is whether his English illiteracy is inconsistent with the VE's testimony that he could perform jobs with an LD level of 1 or 2. Other courts have noted that the DOT seems to create a literacy requirement and have emphasized that common sense, as well as the medical-vocational guideline section of the regulations (commonly referred to as the "grids"), 20 C.F.R., pt. 404, subpt. P, app. 2, demonstrate that many illiterate people can and do work. See Rowe v. Astrue, Civ. No. 07-348-JMH, 2008 WL 1711538, at *3 (E.D. Ken. Apr. 10, 2008); Pacheco v. Colvin, 83 F. Supp. 3d 1157, 1167 (D. Col. 2015); Rivera v. Comm'r of Soc. Sec., No.3:13-cv-772, 2014 WL 4956224, at *16 (N.D. Ohio Sept. 30, 2014); Priel v. Astrue, No. 08-cv-213, 2010 WL 184329 (W.D.N.Y. Jan. 15, 2010) . Indeed, it does seem to make little sense to read the DOT as essentially precluding those without English language skills from *all* positions, even those with the lowest language requirements, when common experience shows to the contrary. However, for purposes of this Order, the Court will assume that the DOT means what it says, and that even the least demanding positions in regard to language development require a certain degree of English literacy.

Regardless, the Court finds that even if the inability to communicate in English is inconsistent with the ability to perform *any* jobs in the DOT, any conflict in this case between the VE's testimony and the DOT was properly resolved. The ALJ expressly addressed the issue in her decision. As she noted, although Plaintiff equates the GED's requirements with the actual jobs' duties, this is not entirely accurate. "GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job." Pacheco, 83 F. Supp. 3d at 1167 (quoting Anderson v. Colvin, 514 Fed. Appx. 756, 764 (10th Cir. 2013)). In other words, GED discusses the background an individual must have to perform the positions generally, not the actual tasks of the jobs themselves. More importantly, though, the VE specifically testified that the jobs she found Plaintiff capable of performing did not require the ability to speak and communicate in English. (R. 671-73). Therefore, any potential conflict with the DOT was resolved via the VE's testimony. See Molina Virola v. Comm'r of Soc. Sec., No. 18-CV-4778, 2020 WL 362747, at *4 (E.D. Pa. Jan. 22, 2020) (holding that the DOT language requirement "does not require a 'per se' finding of disability for someone who does not speak or write English.  SSA regulations simply require that the VE explain whether, based on her experience, the job can in fact be performed without speaking or writing English, notwithstanding the DOT presumption.").

Accordingly, for the reasons stated herein, the ALJ's decision is supported by substantial evidence. The Court will therefore affirm.

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (document No. 13) is DENIED and that Defendant's Motion for Summary Judgment (document No. 16) is GRANTED.

<u>s/Alan N. Bloch</u>
United States District Judge

ecf:   Counsel of record